### In re SOUTHEAST BANKING CORPORATION, Debtor.

### William A. BRANDT, Jr., as Trustee of Southeast Banking Corporation, Plaintiff,

### v.

### Florence S. BASSETT, as Personal Representative of the Estate of Harry Hood Bassett, Donald N. Boyce, Joseph A. Boyd, M. Anthony Burns, Edward D. Duda, Alfonso Fanjul, Jr., James J. Forese, R. Ray Goode, H.C. Henry, Jr., Paul L. Hill, Melvin Jacobs, Kenneth O. Johnson, Nicholas deB. Katzenbach,

---

James W. McLamore, William E. Moeller, William D. Plechaty, John E. Porta, Willie C. Robinson, Charles D. Towers, Jr., Dorothy C. Weaver, J. Steven Wilson, Charles J. Zwick, and John Does 1–25, Defendants.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Southeast Bank, N.A., Intervenor/Plaintiff,

v.

William A. BRANDT, Jr., as Trustee of Southeast Banking Corporation, Defendant.

William A. BRANDT, Jr., as Trustee of Southeast Banking Corporation, Plaintiff,

v.

Florence S. BASSETT, as Personal Representative of the Estate of Harry Hood Bassett, Donald N. Boyce, Joseph A. Boyd, M. Anthony Burns, Edward D. Duda, Alfonso Fanjul, Jr., James J. Forese, R. Ray Goode, H.C. Henry, Jr., Paul L. Hill, Melvin Jacobs, Kenneth O. Johnson, Nicholas deB. Katzenbach, James W. McLamore, William E. Moeller, William D. Plechaty, John E. Porta, Willie C. Robinson, Charles D. Towers, Jr., Dorothy C. Weaver, J. Steven Wilson, Charles J. Zwick, and John Does 1–25, Defendants.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of Southeast Bank, N.A., Intervenor/Plaintiff,

v.

William A. BRANDT, Jr., as Trustee of Southeast Banking Corporation, Defendant.

No. 92–1600–CIV.

United States District Court, S.D. Florida.

Oct. 29, 1992.

J. Joseph Bainton, Richard F. Markert, Norma B. Levy, Jonathan S. Sanoff, Cheryl Spinner, Phillip M. Smith, Robert I. Goodman and Rachel Danish of Whitman & Ransom, New York City, for plaintiff William A. Brandt, Jr., as trustee of Southeast Banking Corp.

Robert T. Wright, Jr. of Mershon, Sawyer, Johnston, Dunwoody & Cole, P.A., Miami, Fla., Stuart J. Baskin, Joseph F. Haggerty, William F. Ranieri and James R. Warnot, Jr. of Shearman & Sterling, New York City, Aaron S. Podhurst, Robert C. Josefsberg and Katherine W. Ezell of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Oling & Perwin, Miami, Fla., Michael R. Smith, Charles K. McKnight, Michael W. Youtt and Griffin B. Bell of King & Spaulding, Atlanta, Ga., C. Harris Dittmar of Bedell, Dittmar, Devault & Pillans, P.A., Jacksonville, Fla., Hy Shapiro of Hogan, Greer & Shapiro, P.A., Miami, Fla., Michael G. Tannar of Kirschner, Main, Petrie, Graham & Tannar, Jacksonville, Fla., Jerome G. Snider, Grace M. Rodriguez and Nicholas A. Kronfeld of Davis Polk & Wardwell, Washington, D.C., Michael A. Nachwalter and Brian F. Spector of Kenny Nachwalter Seymour Arnold & Critchlow,

P.A., Thomas Meeks of Floyd, Pearson, Richman, Greer, Weil Brumbaugh & Russomano, P.A., Barry D. Hunter of Paul, Landy, Bailey & Harper, Miami, Fla., Walter C. Carlson of Sidley & Austin, Chicago, Ill., for defendants.

Patricia F. Bak of F.D.I.C., Washington, D.C., Karen Wilau, Randall L. Hughes, Richard C. Mitchell, Christopher P. Galanek, Daniel R. King, Jeffrey D. Raquin and Adrienne E. Marting of Powell Goldstein Frazer & Murphy, Atlanta, Ga., James P. Paul and Juan A. Gonzalez of Haley, Sinagra & Perez, P.A., Henry N. Adorno and Neal B. Shniderman of Adorno & Zeder, P.A., Miami, Fla., for intervenor plaintiff F.D.I.C., in its capacity as receiver of Southeast Bank, N.A.

Mark D. Bloom of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, Fla., for defendant William A. Brandt, Jr., as trustee of Southeast Banking Corp.

## ORDER DENYING, WITHOUT PREJUDICE, FDIC'S MOTION TO DISQUALIFY TRUSTEE'S COUNSEL

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the FDIC's Motion to Disqualify Trustee's Counsel, Whitman & Ransom, and four individual attorneys at Whitman & Ransom, file dated August 4, 1992.

THE COURT has considered the motion, responses, the pertinent portions of the record, and oral argument of counsel heard on October 23, 1992. For the following reasons, it is

ORDERED and ADJUDGED that the said motion be, and the same is hereby DENIED WITHOUT PREJUDICE until raised again, if the FDIC becomes an adversary party in these proceedings.

*Background*

Until its failure on September 19, 1991 Southeast Bank, N.A. ("SEBNA") was a national bank duly organized and existing under the laws of the United States. On that date the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver of SEBNA by the Office of the Comptroller of the Currency. Thereafter, on September 20, 1991 Southeast Banking Corporation ("Southeast"), the holding company and sole shareholder of SEBNA filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida ("bankruptcy court"). William A. Brandt, Jr. was appointed by the bankruptcy court as the Trustee in the Chapter 7 bankruptcy proceedings.

On June 5, 1992, the bankruptcy court approved *nunc pro tunc* to May 4, 1992, the retention of the law firm of Whitman & Ransom, *et. al.*, as special counsel to the Trustee of Southeast to investigate and prosecute the Trustee's claims, if any, against former officers and directors of, and professionals who rendered legal and/or accounting services to Southeast.

On or about June 16, 1992 William A. Brandt, Jr., as Trustee of Southeast, filed in bankruptcy court the instant action against 25 "John Does" and 23 former officers and directors of Southeast,[1] most of whom also served as officers and directors of SEBNA, seeking redress for at least $100 million in damages and injuries to Southeast allegedly caused by the defendants' negligence, gross negligence, gross mismanagement and actions in conscious disregard of the best interests of Southeast.

On or about June 24, 1992 the Trustee moved this Court for the withdrawal of the District Court's reference to the bankruptcy court of cases arising under Title 11, or proceedings arising in or related to a case under Title 11, in respect of this action, in view of the Trustee's jury demand, the averred "non-core" character of this matter and, as the Trustee asserted, the consequent inability of the bankruptcy court to conduct a jury trial. On August 18, 1992 all defendants joined in the Trustee's motion to withdraw the reference, and this

---

1. Subsequently, the case was dismissed as to one named Defendant, leaving 22 former officers and directors as named Defendants in this lawsuit.

Court subsequently granted the motion to withdraw the reference.

On or about July 21, 1992 the FDIC moved the bankruptcy court to intervene in the adversary proceeding against the Trustee. The FDIC's proposed intervention complaint asserted, in essence, that the claims set forth in the Trustee's Complaint belong to the FDIC and not to the Trustee. The bankruptcy court denied the motion to intervene, with leave to renew in this Court. This Court thereafter granted the FDIC's motion to intervene, and the FDIC then filed its Complaint in Intervention against the Trustee.

On or about August 4, 1992 the FDIC filed a motion to disqualify Whitman & Ransom and four of its attorneys, individually, from representing the Plaintiff Trustee. The motion to disqualify is the motion currently before this Court.[2]

*Discussion*

The following items have been filed with respect to the motion to disqualify Trustee's counsel:

1. Federal Deposit Insurance Corporation as Receiver of Southeast Bank, N.A.'s Motion to Disqualify Plaintiff's Counsel, including affidavits, file dated August 4, 1992.

2. Brief in Support of the Federal Deposit Insurance Corporation as Receiver of Southeast Bank, N.A.'s Motion to Disqualify Plaintiff's Counsel, file dated August 4, 1992.

3. Trustee's Memorandum of Law in Opposition to the FDIC's Motion to Disqualify Whitman & Ransom, including expert declaration, file dated September 14, 1992.

4. Federal Deposit Insurance Corporation's Reply to Trustee's Memorandum of Law in Opposition to Motion to Disqualify Whitman & Ransom, including expert declaration, file dated September 21, 1992.

5. Notice of Filing Supplemental Authority, file dated September 22, 1992.

6. Response to Trustee's Notice of Filing Supplemental Authority, file dated September 24, 1992.

7. Trustee's Reply Regarding Notice of Supplemental Authority, file dated September 24, 1992.

On October 23, 1992 the Court heard oral argument on the motion to disqualify Whitman & Ransom, *et al.*

FDIC'S MOTION TO DISQUALIFY

The FDIC moves to disqualify J. Joseph Bainton, Richard F. Markert, Norma B. Levy, Jonathan S. Sanoff and the law firm of Whitman & Ransom, attorneys for the Plaintiff, William A. Brandt, Jr., as Trustee of Southeast, from representing Plaintiff pursuant to Rules 4–1.7(a) and 4–1.10(a) of the Rules Regulating the Florida Bar, prohibiting non-consensual concurrent representation, and imputing the disqualification of an individual attorney to the law firm with which he or she is associated.

Rule 4–1.7 provides, in part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and

(2) Each client consents after consultation.

The FDIC argues that the claims the Trustee seeks to assert are in fact owned by the FDIC pursuant to 12 U.S.C. Section 1821(d)(2)(A)(i). Thus, it argues, with regard to the legal representation by Whitman & Ransom, *et. al.*, the interest of the FDIC and the Trustee are necessarily adverse and a direct conflict of loyalties exists. Further, the FDIC states that the claims, if proven, are likely to be satisfied out of the same limited insurance fund;

---

**2.** There are several motions pending, which are not yet at issue, which were filed as late as October 22, 1992, the day before oral argument was heard on the motion to disqualify. These other motions will be considered separately, and are not involved at this time. Also, at the close of oral argument on October 23, 1992, this Court made procedural rulings with regard to time for filing responses, answers and documents. Such rulings will be reflected in a separate order of the Court.

also, it argues that successful prosecution of the Trustee's claims, if satisfied by the Defendants' personal assets subject to judgment, will deplete this source of funds otherwise available to reimburse the FDIC for losses to its insurance fund caused by SEBNA's failure.

The FDIC also argues that at no time prior to undertaking the representation of the bankruptcy Trustee did any representative of Whitman & Ransom consult with the FDIC regarding such representation, as is required by the FDIC *Guide for Outside Counsel.*

In support of its motion, the FDIC submitted several affidavits of FDIC staff attorneys which list ten other unrelated matters in litigation throughout the country in which Whitman & Ransom is representing the FDIC and state that therefore Whitman & Ransom has access to the unique legal resources of the FDIC and has gained substantial insight into the deliberative processes and litigation strategies of the FDIC. As provided in Exhibit F to the Trustee's Memorandum of Law in Opposition to the FDIC's Motion to Disqualify Whitman & Ransom, it is noted that Whitman & Ransom represents the FDIC in a total of forty-three matters in litigation throughout the country. The FDIC argues that Whitman & Ransom, as outside counsel for the FDIC, is granted access to the litigation strategy, brief bank and wealth of knowledge of the FDIC. The FDIC maintains that Whitman & Ransom has became familiar with the FDIC's litigation strategy, which will result in detriment to the FDIC if Whitman & Ransom remains here in representation of the Trustee. Thus, the FDIC concludes that allowing Whitman & Ransom to continue its representation of the bankruptcy Trustee will taint this judicial proceeding and disadvantage the FDIC in its efforts to carry out its congressionally-mandated duty to investigate the failure of SEBNA and to bring claims against those persons responsible, when and if appropriate. And, these arguments do not take into consideration the possibility of the perception of impropriety if the motion to disqualify were denied.

In support of its position, the FDIC has cited the cases of *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir.1976); *Florida Insurance Guaranty Association, Inc. v. Carey Canada, Inc.*, 749 F.Supp. 255 (S.D.Fla.1990); *State ex rel. Morgan Stanley & Co., Inc. v. MacQueen*, 187 W.Va. 97, 416 S.E.2d 55 (1992); *Avacus Partners, L.P. v. Brian*, Fed.Sec.L.Rep. P 94,920, 1990 WL 6576 (Del.Ch.1990); *Udall v. Littell*, 366 F.2d 668 (D.C.Cir.1966) *cert. denied*, 385 U.S. 1007, 87 S.Ct. 713, 17 L.Ed.2d 545 (1967); *Piambino v. Bailey*, 757 F.2d 1112 (11th Cir.1985); and *Jackshaw Pontiac v. Cleveland Press Pub Co.*, 102 F.R.D. 183 (N.D.Ohio 1984). At this stage of the proceedings, none of the cases cited involve facts similar enough to be controlling in deciding this motion.

## TRUSTEE'S RESPONSE IN OPPOSITION TO THE FDIC'S MOTION TO DISQUALIFY

The Trustee states that the issue of the ownership of the claims is the only one on which the FDIC and the Trustee are adverse. The Trustee has retained another law firm, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., to assume the responsibility of responding to the issue of the ownership of the claims. The Trustee argues that the retention of the Greenberg, Traurig law firm eviscerates any potential conflict of interest of Whitman & Ransom.

With regard to the FDIC's argument that a direct conflict of interest exists because the claims asserted by the Trustee, if proven, are likely to be satisfied out of the same source of funds available to cover claims which may be asserted by the FDIC against the Defendants, the Trustee asserts that this does not constitute a direct conflict. First, Trustee argues, it is not even clear whether the FDIC will ever bring claims against the Defendants. Second, Trustee argues, it is unclear whether, and to what extent, judgments may be obtained against the Defendants in favor of the Trustee as opposed to the FDIC. Third, Trustee argues, it is unclear whether the insurance coverage and/or the personal

assets of the Defendants will be sufficient to satisfy any or all judgments these parties may obtain years in the future.

Finally, the Trustee states that the notice requirements of the FDIC's Guide for Outside Counsel were substantially complied with, and, in any event, does not provide for disqualification of counsel.

In support of its position, the Trustee has cited the cases of *Anderson v. Bank of the South*, 118 F.R.D. 136 (M.D.Fla.1987); *Sheftelman v. Jones*, 667 F.Supp. 859 (N.D.Ga.1987); *In re Griffith*, 304 Or. 575, 748 P.2d 86 (1987); and *In re Infotechnology, Inc. Shareholder Litigation*, 582 A.2d 215 (Del.1990) (overruled *Avacus Partners*, *supra*). At this stage of the proceedings, none of the cases cited involve facts similar enough to be controlling in deciding this motion.

Additionally, the Trustee has submitted the expert declaration of Geoffrey C. Hazard, Jr., who, among other things, is Sterling Professor of Law at Yale Law School and Director of the American Law Institute. It is his opinion, based on a review of the relevant pleadings, that no conflict of interest arises as a result of Whitman & Ransom's representation of the Trustee in this case and its representation of the FDIC in various unrelated matters.

Mr. Hazard states that no conflict exists by virtue of the FDIC's assertion that it owns the claims in this case since, on this issue, the firm of Greenberg, Traurig, *et. al.*, alone, represents the Trustee. This avoids a conflict of interest, he argues, because the dispute over the ownership of claims is the only one to which the Trustee and the FDIC are adverse. In this case, he points out, the FDIC and the Trustee have as yet undetermined claims of undetermined size and scope against as yet undetermined obligors. Therefore, it is his opinion that the basis on which the FDIC claims a conflict of interest in this case is too speculative to justify disqualification—according to the record in this case it is not yet clear whether the FDIC will ever bring claims against the Defendants. Furthermore, this expert states, the contingent possibility that the Trustee, if successful, will likely seek to satisfy judgments against the Defendants from the same source of funds available to the FDIC to cover claims it may bring against the same Defendants, does not constitute direct adversity.

He also states that the policy underlying Rule 4–1.7 is to assure zealous representation of clients. He argues that because the matter here and those in which Whitman & Ransom represents the FDIC are unrelated, there appears to be no risk to the quality of representation provided to the FDIC.

Mr. Hazard also concludes that Whitman & Ransom's access to the FDIC's brief bank and other legal information would be relevant only if Whitman & Ransom's representation of the FDIC was in matters where such information could be used against the FDIC; and, here, he notes, the Greenberg, Traurig firm is representing the Trustee in all matters adverse to the FDIC. With regard to the FDIC *Guide for Outside Counsel*, it is Mr. Hazard's opinion that no provision of the manual expands or alters the disciplinary rules that determine when counsel must decline representation. Hence, he states, it is incumbent upon the party seeking disqualification to establish a violation of those rules and that the violation justifies disqualification; in his opinion, the FDIC has not met that burden.

FDIC'S REPLY

The FDIC argues that the direct conflict regarding the ownership of claims, which is admitted by the Trustee, is inextricably linked to the issues of liability and damages. The FDIC maintains that the factual issues with respect to ownership of the claims have not been established by Whitman & Ransom and the Trustee to be totally separate from the factual issues that relate to liability and damages. The FDIC states that the issues of ownership concern the methods of operation of Southeast, the holding company, and SEBNA; the capacity in which officers and directors were acting at the time of liability-producing actions; and the distribution of funds from SEBNA to Southeast, the holding company. Therefore, the FDIC argues, retention of

the law firm of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A. for the purpose of responding to the FDIC's claims regarding issues of ownership is not sufficient to overcome the directly adverse interests of the FDIC and the Trustee.

Along with its Reply, the FDIC offers the declaration of its expert, L. Ray Patterson, who, among other things, presently occupies the endowed Pope Brock Professor of Legal Ethics chair at the University of Georgia, and has authored two books on professional responsibility, as well as several articles on the same topic. In reaching his conclusions, Mr. Patterson assumed the following facts.

1. The FDIC as receiver is the statutory successor to all rights of Southeast Bank, N.A. and its shareholders, including all claims against officers and directors for wrongdoing of any kind that caused harm to Southeast Bank, N.A., and therefore the FDIC owns those claims; and

2. The claims against officers and directors of Southeast Bank, N.A. will be satisfied, if at all, by insurers of the officers and directors and from their personal assets. Therefore, any recovery will be limited, and the Trustee and the FDIC will have to share according to their ownership of the claims and entitlement to insurance.

His opinion is that Whitman & Ransom has a conflict of interest and should be disqualified from representing the Trustee, for the following reasons.

1. Whitman & Ransom represents both the Trustee and the FDIC, who have a conflict of interest between themselves as to ownership of the claims against the officers and directors. In this case, the interests of the FDIC and the Trustee are directly adverse because both claim ownership of the claims against the officers and directors, which must be satisfied by limited assets; and

2. Attorneys for the insurers will surely exploit the differences between the Trustee and the FDIC. For example, attorneys for the insurers can use ownership of the claims as a defense. Such a defense will compel Whitman & Ransom to protect the interest of the Trustee at the expense of the FDIC. Whitman & Ransom has already highlighted the conflict by arguing that the FDIC's notice to the insurer was insufficient, thereby setting up an argument that the Trustee is entitled to all proceeds.

This expert also opines that the burden is upon Whitman & Ransom to establish that conflicts will not materialize in the future. Further, he states, Whitman & Ransom has breached its fiduciary duty to the FDIC by preferring its own interest to the interest of the FDIC in matters related to Whitman & Ransom's representation of the FDIC. He argues that although the concurrent representation is in different cases, the duty of loyalty precludes a lawyer from acting for and against the same client at the same time. The expert also concludes that Whitman & Ransom has violated the terms of its contract with its client, the FDIC, as embodied in the FDIC *Guide to Outside Counsel.*

Mr. Patterson points out that Whitman & Ransom argues that Rule 4–1.7(a) applies only to direct adversity, and by implication, does not prohibit a conflict of interest that involves only indirect adversity. His opinion is that there is a fallacy in this reasoning because Rule 4–1.7(a) does not address indirect adversity; therefore, he states, under the reasoning of Whitman & Ransom, Whitman & Ransom would have no duty to inform the client of indirect adversity even though Rule 4–1.4 requires a lawyer to keep a client reasonably informed about the status of a matter. It is Mr. Patterson's opinion that it is improper to parse a rule of ethics in order to justify unethical conduct.

Conclusion

In consideration of the record and at this stage of the proceedings, the Court is not in a position to determine either factually, or as a matter of law, whether to disqualify Whitman & Ransom, *et. al.* Other than the affidavits of FDIC staff attorneys, the joint declaration of the four individual Whitman & Ransom attorneys and declarations of experts, there has been no depositions or discovery related to this matter to allow the Court to make findings of fact.

With respect to the law, those matters are more properly addressed in motions for summary judgment. No actionable or justiciable controversy now exists between the FDIC and the Trustee.

The FDIC is not yet an adversarial party to this litigation, and has so far only seen fit to file against the Trustee, and not against the individual Defendants. Accordingly, the Court deems it necessary and appropriate to deny the motion to disqualify at the present time, with leave to renew at the time when, and if, the FDIC submits itself as an actual party. The FDIC is not required to become a party. It has the prerogative to enter into the litigation, and the Court cannot compel it to do so. However, the burden should not be on the Court to decide whether it believes the FDIC will eventually become involved in the litigation of the claims against the former officers and directors.

The Eleventh Circuit prevailing law recognizes that the FDIC is not entitled to an absolute priority over the shareholders of a failed bank. *See FDIC v. Jenkins*, 888 F.2d 1537 (11th Cir.1989) and *Howard v. Haddad*, 916 F.2d 167 (4th Cir.1990) (expressly adopting analysis contained in *Jenkins*); *cf. Gaff v. FDIC*, 919 F.2d 384 (6th Cir.1990), *as modified*, 933 F.2d 400 (6th Cir.1991). Therefore, at this time it cannot be said that the Trustee is not a proper party in the litigation; and it cannot be said that the FDIC is a party to an actual or justiciable controversy with the Trustee before this Court; nor can it be said, at this time, that some or all of the claims asserted by both parties, the FDIC and the Trustee, may properly lie at some point in the future. It is therefore

ORDERED and ADJUDGED that the FDIC's Motion to Disqualify Trustee's Counsel, Whitman & Ransom, *et. al.*, be and the same is hereby DENIED WITHOUT PREJUDICE until raised again, if the FDIC becomes an adversary party in these proceedings.

DONE AND ORDERED.